UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RUNE KRAFT,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>OFFICE OF THE COMPTROLLER OF CURRENCY, WELLS FARGO BANK NATIONAL ASSOCIATION, AND DOES 1-10, Inclusive,<br><br>　　　　　　Defendants. | 4:20-CV-04111-RAL<br><br><br>OPINION AND ORDER GRANTING MOTIONS TO DISMISS |

　　　Rune Kraft (Kraft) filed this pro se lawsuit against the Office of the Comptroller of Currency (the OCC) and Wells Fargo Bank, N.A. (Wells Fargo). Doc. 1. In his complaint, Kraft alleges a First Cause of Action for "Equal Protection, Declaratory and Equitable Relief" and a Second Cause of Action for "Declaratory and Equitable Relief" and attached multiple documents to his complaint. See Doc. 1 at 26–27; Doc. 1-1. In brief, Kraft claims restitution under a consent order between the OCC and Wells Fargo, see Doc. 1-1 at 47–72, and he seeks declaratory judgment to that effect, Doc. 1. Both the OCC and Wells Fargo have filed motions to dismiss. Docs. 15, 20. For the reasons stated herein, both motions to dismiss are granted without prejudice to Kraft refiling a claim against Wells Fargo for negligence, if he so wishes.

1

I.   **Facts Alleged**[1]

Kraft alleges that in 2007 and 2008, certain individuals[2] opened six different bank accounts at Wells Fargo on behalf of three different companies belonging to Kraft: ServicePartner, Inc., the 24-7 Group of Companies, Inc., and Artesia, Inc. Doc. 1 at 3–5; Doc. 1-1-at 5–10, 15–20, 25–30, 35–46. Kraft's complaint states that these three companies were merged into one company, Pacific Equipment Management Company, and that company's rights were assigned to Kraft. Doc. 1 at 6.

Kraft alleges that Wells Fargo failed to verify that the individuals had the authority to open bank accounts on behalf of his companies. Doc. 1 at 3–5, 10–11. Kraft points to Wells Fargo's policy to review both a company's articles of incorporation and a corporate resolution to verify that the individual opening a corporate account has the authority to do so. Doc. 1 at 3, 8; Doc. 1-1 at 3. Kraft alleges that Wells Fargo only reviewed the articles of incorporation of each of his companies and did not require that the individuals produce a corporate resolution. Doc. 1 at 3–5, 10–11. The articles of incorporation attached to the complaint do not reference any of the individuals who opened these accounts.[3] Doc. 1 at 3–5, 11; Doc. 1-1 at 11–14, 21–24, 31–34. In other words, Kraft claims that Wells Fargo did nothing to verify that the individuals were authorized to open accounts or even affiliated with the companies. Doc. 1 at 3–5, 11. Kraft alleges that about $1.3 million of his companies' funds were deposited into these accounts and that these

---

[1] The facts are taken from Kraft's complaint, Doc. 1, and the documents attached thereto, Doc. 1-1. This Court of course is making no factual findings when ruling on a motion to dismiss.
[2] From the Wells Fargo Bank records, it appears as though those individuals were Wilfred T. Roberts, Melanie L. Roberts, and Anita Vance. Doc. 1-1 at 5–10, 15–20, 25–30, 35–46.
[3] The articles of incorporation for each company named Trevor C. Rowley the sole member of the Board of Directors and as the incorporator. Doc. 1-1 at 11–14, 21–24, 31–34.

individuals either transferred or withdrew monies from the accounts without authorization.[4] Doc. 1 at 3, 11.

Then in 2016, Wells Fargo made national headlines for its banking practices. The OCC found that Wells Fargo and its employees were opening deposit accounts and making related transfers without authorization from its customers. Doc. 1 at 11. The OCC identified "(1) deficiencies and unsafe or unsound practices in the Bank's risk management and oversight of the Bank's sales practices, and (2) unsafe or unsound sales practices by the Bank." Doc. 1 at 13; Doc. 1-1 at 48. Pursuant to its authority under 12 U.S.C. § 1818 (b)(1), the OCC instituted a cease and desist proceeding. Doc. 1-1 at 62, 67. Wells Fargo ultimately entered into a settlement with the OCC and executed a Stipulation and Consent to the Issuance of a Consent Order. Doc. 1 at 11–12; Doc. 1-1 at 47–72. Under the Consent Order between the OCC and Wells Fargo, the OCC ordered Wells Fargo to pay restitution to those harmed by such practices. Doc. 1-1 at 58–59; see also 12 U.S.C. § 1818(b)(6)(A). The chairman and chief executive officer of Wells Fargo have since testified before Congress and stated that Wells Fargo had "accepted responsibility and would make restitution." Doc. 1 at 16; see also Doc. 1-1 at 74–78. Wells Fargo also ran a nationwide campaign promising to "refund all customers and make things right." Doc. 1 at 16.

Kraft asserts that Wells Fargo violated federal law, namely 31 C.F.R. § 1020.220, when it failed to properly verify those individuals' authority to open bank accounts on behalf of his companies and withdraw or transfer money from such accounts. Doc. 1 at 9–11. He also claims that this incident entitles him to restitution from Wells Fargo based on the Consent Order between Wells Fargo and the OCC as well as Wells Fargo's promises to Congress and the public. Doc. 1

---

[4] The complaint does not state when the monies were withdrawn or when Kraft became aware of these accounts. The complaint, however, references generally equitable tolling of the statute of limitations. Doc. 1 at 23.

at 11–20. To date Kraft has received no restitution from Wells Fargo. Doc. 1 at 6, 20. Kraft now seeks declaratory judgment from the Court that: (1) Kraft has a right to have the OCC make Wells Fargo pay him restitution; (2) Kraft has a right to receive restitution from Wells Fargo; and (3) Kraft has a right to receive punitive damages from Wells Fargo. Doc. 1 at 28. Although Kraft's complaint is no model of clarity, he does not claim negligence under state law or breach of any account agreement.[5] Rather, Kraft invokes 42 U.S.C. § 1983 and federal question jurisdiction and mentions diversity jurisdiction only in passing and not as part of articulating any claims based on state law. Doc. 1 at 1–31. Both Wells Fargo and the OCC have moved to dismiss Kraft's complaint based on lack of subject matter jurisdiction and failure to state a claim. Docs. 15, 20.

## II.   Standards of Review

### A. Lack of Subject Matter Jurisdiction

On a motion to dismiss under Rule 12(b)(1), the standard of review depends on whether the defendant is making a facial attack or factual attack on subject matter jurisdiction. Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520–21 (8th Cir. 2007). Where the defendant makes a facial attack to challenge whether the facts alleged in the complaint establish subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest"

---

[5] Kraft's briefs opposing the motions to dismiss do not argue any state law claims of negligence or breach of contract. Docs. 17, 23, 31. Of course, Kraft may face a statute of limitations or other bar to any such claims, so nothing in this Opinion and Order should be taken to comment on the merit or lack of merit of any such claim.

4

that jurisdiction exists. Stalley, 509 F.3d at 521. The Court's review is limited to the face of the pleadings. Branson Label, Inc. v. City of Branson, Mo., 793 F.3d 910, 914 (8th Cir. 2015).

On the other hand, where the defendant attacks the factual basis for subject matter jurisdiction, the court can consider matters outside the pleadings, and the nonmoving party does not have the benefit of 12(b)(6) safeguards. Id. at 914–15; Osborn, 918 F.2d at 729 n.6. "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (cleaned up and citation omitted). In that case, "no presumptive truthfulness attaches to the plaintiff's allegations," and a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.3d at 730 (citation omitted). Here, the motions to dismiss appear to be a facial attack on whether the facts alleged in the complaint state a claim within this Court's jurisdiction, so the protections of Rule 12(b)(6) apply.

### B. Failure to State a Claim

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at

678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

The Eighth Circuit requires district courts to construe pro se complaints liberally. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Id. at 915. This rule of liberal construction, however, does not excuse a pro se plaintiff from alleging enough facts to support his claims. Id. at 914. That is, even though a plaintiff is proceeding pro se, the district court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Id. at 915.

### III. Discussion

#### A. Wells Fargo's Motion to Dismiss

Wells Fargo has moved to dismiss Kraft's complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 15. Wells Fargo first asserts that Kraft has failed to state a claim because he is not authorized to bring a private cause of action under the Bank Secrecy Act or the USA PATRIOT Act. Wells Fargo also argues that this Court lacks subject matter jurisdiction to enforce a consent order between the OCC and Wells Fargo and that there is no third-party right to enforce such a consent order. Finally, Wells Fargo argues that Kraft's allegations that Wells Fargo failed to live up to its

promises made to Congress and the public are insufficient to state a claim for relief. This Court addresses each contention in turn.

### 1. Violation of 31 C.F.R. § 1020.220

Kraft first alleges that Wells Fargo has violated 31 C.F.R. § 1020.220. The Bank Secrecy Act, as amended by the USA PATRIOT Act, 31 U.S.C. §§ 5311 *et seq.*, is the source of this claim. In an effort to combat money laundering and the financing of terrorism, the Bank Secrecy Act requires financial institutions like Wells Fargo to establish anti-money laundering programs. 31 U.S.C. § 5318(h). Section 5318(h)(2) authorizes the Secretary of Treasury to adopt regulations prescribing the minimum requirements of such programs. As it relates to this case, the regulations require that as part of the financial institution's anti-money laundering program, the financial institution must have a Customer Identification Program. 31 C.F.R. § 1020.220. This means that at a minimum the financial institution must have written policies and procedures in place to verify the identities of its customers. Id. Kraft claims that Wells Fargo failed to follow its own policies and procedures set forth in its Customer Identification Program because Wells Fargo did not verify that the individuals opening the accounts and withdrawing money from the accounts had the authority to do so or any relationship to the companies.

Wells Fargo contends that Kraft's claim must be dismissed because there is no private cause of action under the Bank Secrecy Act, the USA PATRIOT Act, or any regulation passed in accordance therewith. Indeed, courts have repeatedly held that there is no private right of action under the Bank Secrecy Act or the USA PATRIOT Act. See James v. Heritage Valley Fed. Credit Union, 197 Fed. App'x 102, 106 (3d Cir. 2006) (noting that the Bank Secrecy Act does not authorize a cause of action against the financial institution or its employees); AmSouth Bank v. Dale, 386 F.3d 763, 777 (6th Cir. 2004) ("[T]he Bank Secrecy Act does not create a private right

7

of action."); Reg'l Produce Coop. Corp. v. TD Bank, N.A., No. CV 19-1883, 2020 WL 1444888, at *11 (E.D. Pa. Mar. 24, 2020) ("It is undisputed that there is no private right of action under the Bank Secrecy Act."); Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A., No. 19-cv-02778-TSH, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) (collecting cases in which courts have held that there is no private cause of action under the Bank Secrecy Act or USA PATRIOT Act); Belle Meade Title & Escrow Corp. v. Fifth Third Bank, 282 F. Supp. 3d 1033, 1039 (M.D. Tenn. 2017) (same); In re Agape Litig., 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[T]he Bank Secrecy Act does not create a private right of action."); Armstrong v. Am. Pallet Leasing Inc., 678 F. Supp. 2d 827, 874–75 (N.D. Iowa 2009) ("[T]he Bank Secrecy Act does not permit a private right of action."); Hanninen v. Fedoravitch, 583 F. Supp. 2d 322, 326 (D. Conn. 2008) (dismissing plaintiff's claim in part because neither the USA PATRIOT Act or the Bank Secrecy Act appear "to authorize a private right of action"). Under 31 U.S.C. §§ 5321 and 5322, the United States is the only party authorized to seek civil or criminal penalties for any violation of the Bank Secrecy Act or accompanying regulation.

Because there is no private right of action under the Bank Secrecy Act, the USA PATRIOT Act, or any regulation passed in accordance therewith, Kraft cannot argue that Wells Fargo owed him a common law duty to comply with the policies and procedures set forth in its Customer Identification Program as required by 31 C.F.R. § 1020.220. See Venture Gen. Agency, LLC, 2019 WL 3503109, at *7 (collecting cases in which courts have found that the Bank Secrecy Act does not give rise to a common law duty on the part of the banks); Ferring v. Bank of Am. NA, No. CV-15-01168-PHX-GMS, 2016 WL 407315, at *4 (D. Ariz. Feb. 3, 2016) (finding that the plaintiff could not rely on the Bank Secrecy Act and OCC regulations to establish a duty in a negligence action); Rosemann v. Sigillito, 956 F. Supp. 2d 1082, 1111 (E.D. Mo. 2013) (listing

cases in which courts have found that banks have no duty of care arising from its internal policies or the Bank Secrecy Act); SFS Check, LLC v. First Bank of Del., 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013) (reasoning that plaintiff could not proceed under a negligence theory predicated on compliance with the CIP or the Bank Secrecy Act because the Bank Secrecy Act does not create a private cause of action), aff'd, 774 F.3d 351 (6th Cir. 2014); Armstrong, 678 F. Supp. 2d at 874–75 (collecting cases in which courts have rejected the argument that a duty of care arises from the Bank Secrecy Act). In short, Kraft cannot pursue a cause of action for a violation of the Bank Secrecy Act or the USA PATRIOT Act.[6] This claim against Wells Fargo is dismissed.

### 2. Failure to Comply with the Consent Order

Kraft next alleges that Wells Fargo has failed to pay him restitution as required under the Consent Order issued by the OCC. See Doc. 1-1 at 47–72. Wells Fargo contends that this claim must be dismissed for two reasons: (1) this Court does not have subject matter jurisdiction over the Consent Order and (2) Kraft has no third-party right to enforce the Consent Order. Under 12 U.S.C. § 1818(b)(6), the OCC has the authority to issue an order requiring financial institutions to take affirmative action to correct or remedy any ongoing conditions resulting from any unlawful practice. This affirmative action can include paying restitution to the harmed parties if certain requirements are met.[7] 12 U.S.C. § 1818(b)(6)(A).

---

[6] This Court need not decide whether there might be a state law or common law negligence claim that a company or its assignee may have against a bank that allows an unauthorized person to open and use an account in the company's name or as a vehicle to direct company funds. Kraft has alleged no state law or common law negligence claim in his complaint.

[7] Under 12 U.S.C. § 1818(b)(6)(A)(ii), the *appropriate Federal banking agency* has the authority to order a banking institution to pay restitution if "the violation or practice involved a reckless disregard for the law or any applicable regulations or prior order of the appropriate Federal banking agency." Kraft suggests that this statute allows *him* to seek restitution from Wells Fargo. Doc. 1 at 16. However, the statute is clear the that this authority rests exclusively with the appropriate federal banking agency, in this case the OCC. See 12 U.S.C. § 1818(b)(1) (discussing the appropriate Federal banking agency's authority to issue cease and desist orders generally).

9

When the OCC issues such an order, courts do not have jurisdiction over that order except in very limited circumstances, none of which are applicable here. Specifically, 12 U.S.C. § 1818(i)(1) states that unless provided elsewhere, "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order." Therefore, as a general matter, courts lack jurisdiction to enforce consent orders issued by the OCC. See Taylor v. J P Morgan Chase, NO.: 4:16-CV-52-RL-JEM, 2017 WL 7370978, at *5 (N.D. Ind. June 30, 2017) (finding that adding a claim to enforce a consent order issued by the OCC would be futile because the court lacks jurisdiction over such a consent order); Ferrer v. Yellen, NO. 13-22975-CIV-MARTINEZ/GOODMAN, 2014 WL 12651189, at *6–7 (S.D. Fla. Oct. 3, 2014) (dismissing plaintiff's claims for injunctive and declaratory relief because court lacked jurisdiction to review the consent order issued by the OCC), aff'd, 659 Fed. App'x 982, 988 (11th Cir. 2016).

In the same vein, third parties do not have any right to enforce such a consent order through a private action. Taylor, 2017 WL 7370978, at *5 (noting that third parties have no right to sue to enforce a consent order between a financial institution and the OCC); Kaur v. Comptroller of Currency, No. 2:14–cv–0875 KJM DAD PS, 2014 WL 5473538, at *3 (E.D. Cal. Oct. 28, 2014) ("[T]he [OCC] consent orders placed at issue by plaintiffs' allegations do not provide them with a private right of action to enforce the terms and conditions of those consent orders."); see also Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) ("[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."); Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir. 2002) ("[S]trangers to a consent decree generally do not have standing to enforce a consent decree.").

Some plaintiffs have argued that consent orders are contracts between the government and the party that consents to that order, and therefore, such plaintiffs are entitled to enforce that contract as third-party beneficiaries. See Fontaine v. Bank of Am., N.A., No. 14cv1944-WQH-DHB, 2015 WL 128067, at *7-8 (S.D. Cal. Jan. 7, 2015) (rejecting plaintiff's argument that she was an intended third-party beneficiary of the consent order between the OCC and the Bank of America because the language of the consent order did not evince a clear intent to rebut the presumption that third parties to the consent order are merely incidental beneficiaries). This Court need not consider the likely success of such an argument here because even if a party could enforce a consent order through a breach of contract claim, the consent order at issue in this case is clear that it is not intended to be a contract. See Doc. 1-1 at 63 ("This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(b), and expressly does not form, and may not be construed to form, a contract binding the Comptroller or the United States."); see also Conant v. Wells Fargo Bank, N.A., 60 F. Supp. 3d 99, 116-17 (D.D.C. 2014) (finding that the language in the consent order precluded the plaintiff from bringing a third-party action to enforce the consent order against the defendant). In sum, this Court does not have jurisdiction to enforce the consent order, and Kraft has no right to enforce the consent order through a third-party action. Therefore, this claim against Wells Fargo is dismissed.

### 3. Failure to Abide by Promises Made to Congress and the Public

Finally, Kraft alleges that Wells Fargo has failed to live up to its promises to Congress and the public that "it would refund all customers and make things right" and "would make restitution." Doc. 1 at 16. Although Kraft does not articulate the cause of action under which he is proceeding, this Court will consider whether Kraft has alleged sufficient facts to state a claim for breach of contract, promissory estoppel, and fraudulent misrepresentation.

11

First, this Court considers whether Kraft has alleged sufficient facts to state a claim for breach of contract. Kraft's theory of course is not that Wells Fargo entered into valid contracts for bank accounts with companies Kraft claims he owned, but that Wells Fargo made general promises to refund monies to customers and has not done so for Kraft. To state a claim for breach of contract under South Dakota law[8], the plaintiff must allege the following three elements: (1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages. Bowes Constr., Inc. v. S.D. Dep't of Transp., 793 N.W.2d 36, 43 (S.D. 2010) (citation omitted). To have an enforceable promise, there must be "sufficient cause or consideration." SDCL § 53-1-2(4); Garrett v. BankWest, Inc., 459 N.W.2d 833, 840 (S.D. 1990) (affirming summary judgment on breach of contract claim because plaintiff gave no consideration for the promise). "Consideration may be either a benefit to the promisor or a detriment to the promisee." Poppenga v. Cramer, 250 N.W.2d 278, 279 (S.D. 1977) (citing SDCL § 53-6-1). In this case, Wells Fargo's promises made after any loss occurred do not give rise to a breach of contract claim. Kraft did not give consideration for the promise Wells Fargo made to Congress or the public. Kraft suffered no detriment from the Wells Fargo promise and provided no benefit to Wells Fargo for the promise. Kraft cannot state a claim for breach of contract flowing from Wells Fargo's post-scandal statements.

---

[8] Kraft apparently lives outside of the United States, the companies at issue were incorporated in Nevada, the addresses of the companies appear to be in Nevada or California, and Wells Fargo of course does business throughout the United States. It is not at all clear that South Dakota law applies, but the laws of Nevada and California appear not to differ materially from South Dakota law. See May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration."); Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) ("Nevada law requires the plaintiff in a breach of contract action to show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." (citing Richardson v. Jones, 1 Nev. 405 (1865)); Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011) ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.").

Second, this Court considers whether Kraft has stated a claim for promissory estoppel based on Kraft's allegations that Wells Fargo failed to follow through on its statements about refunding amounts lost or providing restitution. To state a claim for promissory estoppel under South Dakota law[9], the plaintiff must allege the following three elements: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the loss to the promisee must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise made. Hahne v. Burr, 705 N.W.2d 867, 873 (S.D. 2005) (citation omitted). Assuming a false promise was made, Kraft must show he reasonably relied to his detriment on that promise. Kraft alleges that the accounts in question were opened in 2007 and 2008. See Doc. 1-1 at 5–10, 15–20, 25–30, 35–46. Kraft's complaint does not allege when monies were deposited or allegedly diverted from those accounts. Kraft then alleges that Wells Fargo made its promises to Congress and the public in 2016 or sometime thereafter. See Doc. 1-1 at 73–78, 81–82, 91, 94–98. Kraft does not allege that he relied to his detriment on any promise by Wells Fargo in 2016 or thereafter, and Kraft's complaint appears to assert that the detriment he suffered preceded the promise. Regardless, even if the promise had preceded Kraft's detriment, Wells Fargo's promise did not concern accounts opened by individuals wrongfully pretending to be the account owner's representative. See Doc. 1-1 at 73–98.[10] Kraft cannot state a claim for promissory estoppel.

---

[9] Again, Nevada and California law are to similar effect. See Torres v. Nev. Direct Ins. Co., 353 P.3d 1203, 1209 (Nev. 2015) (listing the elements of promissory estoppel (citation omitted)); Flintco Pacific, Inc. v. TEC Mgmt. Consultants, Inc., 205 Cal. Rptr. 3d 21, 26 (Cal. Ct. App. 2016) (same).

[10] Doc. 1-1, pages 73 through 98, are materials that Kraft attached to his complaint in which Wells Fargo addressed the 2016 scandal. The 2016 scandal involved Wells Fargo opening deposit accounts and providing clients with products they did not want or authorize in order to increase employees' sales figures and meet unrealistic company-wide goals. What Kraft alleges occurred in 2007 and 2008 regarding his companies is distinct from that scandal.

Finally, this Court considers whether Kraft has alleged sufficient facts to state a claim for fraudulent misrepresentation. To state a claim for fraudulent misrepresentation under South Dakota law[11], the plaintiff must allege the following six elements: (1) a defendant made a representation as a statement of fact; (2) the representation was untrue; (3) the defendant knew the representation was untrue or at least made the representation recklessly; (4) the defendant made the representation with intent to deceive the plaintiff and for the purpose of inducing the plaintiff to act upon it; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered damage as a result. Est. of Johnson by & through Johnson v. Weber, 898 N.W.2d 718, 729 (S.D. 2017). This claim fails for the same reason that a claim for promissory estoppel fails. Kraft did not rely on or suffer damages as a result of Wells Fargo's promises. His complaint alleges a loss of $1.3 million apparently before Wells Fargo ever made any promises to Congress or the public. Kraft did not allege that he deposited any monies in those accounts in reliance on Wells Fargo's post-scandal statements or did anything else in reliance on those statements. Kraft thus has not stated a claim for fraudulent misrepresentation based on Wells Fargo's post-scandal statements.

**4. Section 1983 Claim**

In his complaint, Kraft states, "In the first cause of action, Plaintiff is applying 42 U.S.C. § 1983 to the facts." Doc. 1 at 21. Kraft cannot state a § 1983 claim against Wells Fargo. To state a claim under § 1983, the plaintiff must allege two elements: (1) a deprivation of a constitutionally

---

[11] Once again, Nevada and California law are substantially similar to South Dakota law on fraudulent misrepresentation. See Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386 (Nev. 1998) (restating the elements of fraudulent misrepresentation under Nevada law, which are virtually the same as the elements required to prove fraudulent misrepresentation under South Dakota law) (citation omitted); West v. JPMorgan Chase Bank, N.A., 154 Cal. Rptr. 3d 285, 295 (Cal. Ct. App. 2013) (restating the elements of fraudulent misrepresentation under California law, which are also virtually the same as the elements required to prove fraudulent misrepresentation under South Dakota law).

protected federal right, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). Kraft cannot show that Wells Fargo, a publicly-traded, multinational financial services company, was acting under the color of state law. See Belcher v. Wells Fargo Bank NA, 377 Fed. App'x 59, 60 (2d Cir. 2010) (affirming dismissal of plaintiff's § 1983 claim against Wells Fargo because the plaintiff failed to allege that Wells Fargo was a state actor); James, 197 Fed. App'x at 106 (finding that plaintiff's § 1983 claim against a financial institution failed in part because that institution was not a state actor); Ceasar v. Wells Fargo Bank, No. 1:18-CV-00479-MAC, 2019 WL 8499521, at *3 (E.D. Tex. Dec. 9, 2019) (dismissing § 1983 claim against Wells Fargo because plaintiff failed to allege facts that made it plausible that Wells Fargo was a state actor); Arreola Castillo v. Wells Fargo Bank, No. 14cv591 GBW/RHS, 2014 WL 12577375, at *2 (D.N.M. Oct. 9, 2014) (finding that plaintiff cannot bring a § 1983 claim against Wells Fargo because Wells Fargo is not a state actor). As such, Kraft cannot maintain a claim against Wells Fargo under § 1983. Because Kraft has failed to state any claim for relief based on the facts alleged in his complaint, his complaint against Wells Fargo is dismissed.

### B. OCC's Motion to Dismiss

Kraft seeks a declaratory judgment that the OCC require Wells Fargo to pay Kraft restitution under the Consent Order. The OCC asserts that this claim for declaratory relief must be dismissed for three reasons. The OCC first contends that the Court lacks subject matter jurisdiction because Kraft cannot point to any law that waives the United States' sovereign immunity. The OCC also argues that Kraft's complaint must be dismissed for insufficient service of process as well as for failure to state a claim upon which relief may be granted. Whether this Court can consider the OCC's latter arguments for dismissal depends on whether this Court has

jurisdiction to hear the case.[12]  As such, this Court will consider the OCC's argument on subject matter jurisdiction first.

This Court has already explained that 12 U.S.C. § 1818(i) deprives this Court of jurisdiction to enforce a consent order and that there is no third-party right to enforce a consent order.  But the OCC raises an additional ground for dismissal by asserting that this Court lacks subject matter jurisdiction over the case because the OCC has not waived its sovereign immunity.

"Sovereign immunity shields the United States and its agencies from suit absent a waiver." Compart's Boar Store, Inc. v. United States, 829 F.3d 600, 604 (8th Cir. 2016) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)).  Sovereign immunity is jurisdictional in nature.  Meyer, 510 U.S. at 475.  Thus, the United States' consent to be sued is a prerequisite to a court acquiring jurisdiction over the case.  Id.  When the United States does give its consent to be sued, that consent must be "express and unequivocal." Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789, 792 (8th Cir. 1996).  If Congress chooses to waive its sovereign immunity, Congress prescribes "the terms and conditions on which the United States consents to be sued, and the manner in which the suit shall be conducted." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (cleaned up and citation omitted).

Where the federal defendant has invoked sovereign immunity as a defense and ground for dismissal, the plaintiff must point to a specific act of Congress that waives sovereign immunity

---

[12] Indeed, if the Court lacks subject matter jurisdiction over the case, it cannot consider the remaining arguments raised in the motion to dismiss.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998) (reaffirming that jurisdiction is a prerequisite to determining the merits of the case); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("[A] federal court necessarily acts ultra vires when it considers the merits of a case over which it lacks subject-matter jurisdiction."); Liedel v. Juv. Ct. of Madison Cnty., Ala., 891 F.2d 1542, 1547 n.8 (11th Cir. 1990) ("Because the district court lacked jurisdiction over this complaint, it should not have considered the merits of the plaintiffs' claims.").

and allows his or her claims to go forward. See VS Ltd. P'ship v. Dep't of Hous. and Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000) ("To sue the United States, [the plaintiff] must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction"). Liberally construing the complaint, Kraft's claims against the OCC conceivably implicate the Federal Tort Claims Act (FTCA) or the Administrative Procedure Act (APA) as a basis for waiving sovereign immunity. Kraft also argues that the Declaratory Judgment Act grants this Court subject matter jurisdiction and operates as a waiver of sovereign immunity. This Court will address the viability of each possibility in turn.

First, this Court considers whether the OCC waived its sovereign immunity under the FTCA. The FTCA operates as a "limited waiver of the United States' sovereign immunity." Mader, 654 F.3d at 797 (citing Molzof ex rel. Molzof v. United States, 502 U.S. 301, 304 (1992)). In relevant part, the FTCA grants district courts exclusive jurisdiction over:

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA, however, contains a number of exceptions to its waiver of sovereign immunity. For example, before an injured party can bring a claim against the United States, the injured party must first exhaust his or her administrative remedies. McNeil v. United States, 508 U.S. 106, 107 (1993). Section 2675(a) states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have

>first presented the claim to the appropriate Federal agency and his claim shall have
>been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). "The Supreme Court has recognized that the most natural reading of § 2675(a) indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." Mader, 654 F.3d at 797 (cleaned up and citation omitted). Here, Kraft has not alleged that he exhausted his administrative remedies before bringing this suit. Further, the United States has conducted a diligent search and has not found any records of any administrative claim under the FTCA submitted to the OCC by Kraft or on his behalf. Doc. 22. Therefore, Kraft has not complied with the terms and conditions on which the United States waives its sovereign immunity.

Furthermore, the only proper defendant in an FTCA action is the United States. See 28 U.S.C. § 2679(a), (b); see also Simpson v. Holder, 184 Fed. App'x 904, 908 (11th Cir. 2006) (citing Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998); Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988); Mars v. Hanberry, 752 F.2d 254, 255 (6th Cir. 1985)). Here, Kraft named the OCC as the federal defendant rather than the United States. This is improper under the FTCA, and therefore, constitutes another ground for dismissal.[13]

This Court next considers whether the OCC waived its sovereign immunity under the APA. Under 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

---

[13] Another exception to FTCA's waiver of sovereign immunity is the discretionary function exception. Under 28 U.S.C. § 2680(a), the FTCA does not apply to "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." While this exception may also be applicable, the OCC has not raised this argument, so this Court need not address whether this exception applies.

18

judicial review thereof." However, judicial review is unavailable when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In this case, the statute that authorizes the OCC to issue consent orders precludes judicial review. As discussed above, 12 U.S.C. § 1818(i)(1) states that unless provided elsewhere in the chapter, "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order." Furthermore, the Consent Order entered into between the OCC and Wells Fargo is a matter committed to agency discretion. See 12 U.S.C. § 1818 (b)(1). Therefore, the OCC has not waived its sovereign immunity under the APA.

Finally, Kraft argues that the Declaratory Judgment Act provides this Court with subject matter jurisdiction and operates as a waiver of sovereign immunity. This argument is a nonstarter. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . " 28 U.S.C. § 2201(a); Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 687 F.3d 1076, 1081 (8th Cir. 2012). It is plain from the statutory text that the Declaratory Judgment Act creates a remedy, not a cause of action. Thus, it cannot serve as the basis for subject matter jurisdiction under 28 U.S.C. § 1331. See Schilling v. Rogers, 363 U.S. 666, 677 (1960) ("[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right."); Anderson v. Sullivan, 959 F.2d 690, 692 n.4 (8th Cir. 1992) (Section 2201 "presupposes an independent form of jurisdiction" and "does not expand the jurisdiction of the federal courts."). Similarly, the Declaratory Judgment Act is not a waiver of

the United States' sovereign immunity. See Muirhead v. Mecham, 427 F.3d 14, 18 n.1 (1st Cir. 2005) ("[T]he Declaratory Judgment Act . . . plainly does not operate as an express waiver of sovereign immunity."); Frenchman Cambridge Irrigation Dist. v. Heineman, 974 F. Supp. 2d 1264, 1278 (D. Neb. 2013) ("The Declaratory Judgment Act is not a waiver of sovereign immunity, and does not provide an independent basis for federal court jurisdiction); CFMOTO Powersports, Inc. v. United States, 780 F. Supp. 2d 869, 877 (D. Minn. 2011) ("[T]he Declaratory Judgment Act creates a remedy; it does not establish jurisdiction or waive sovereign immunity in the absence of some other valid claim."). Because Kraft does not point to any statute in which the United States has expressly waived its sovereign immunity, this Court lacks subject matter jurisdiction over Kraft's claim against the OCC. Therefore, Kraft's complaint against the OCC is dismissed.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Wells Fargo's Motion to Dismiss, Doc. 15, is granted without prejudice to Kraft as assignee on the companies re-filing a negligence claim under state or common law. It is further

ORDERED that the OCC's Motion to Dismiss, Doc. 20, is granted with prejudice.

DATED this 5th day of April, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE